IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| NICHOLAS TEMPLETON, Plaintiff, v. CITY OF DES MOINES, IOWA; MICHAEL FONG and JASON NOBLE, in their individual and official capacities, Defendants. | Case No. 4:21-cv-188 <br><br> **BRIEF IN SUPPORT OF MOTION TO AMEND COMPLAINT TO ADD OFFICERS BECKER, DAHLEN AND CUPPY AS DEFENDANTS** |
|---|---|

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| BACKGROUND FACTS/HISTORY | | 3 |
| I. | AMENDMENT OF PLEADINGS SHOULD BE FREELY GIVEN WHEN JUSTICE SO REQUIRES | 7 |
| II. | UNDER RULE 15(c) THE AMENDED PETITION RELATES BACK TO THE TIME OF FILING | 8 |
| | A. Plaintiff's Amended Complaint Arose From the Same Occurrence as his Original Complaint | 9 |
| | B. Officers Becker, Dahlen and Cuppy had Constructive Notice of this Lawsuit and Should Have Known that, But for a Mistake in Identity, the Action Would Have Been Brought Against Them | 9 |
| | C. The Second and Third Prongs Were Satisfied Within 120 days of Plaintiff Filing Suit | 11 |
| III. | IOWA LAW ON TOLLING THE STATUTES OF LIMITATIONS ALLOWS PLAINTIFF TO ADD OFFICER BECKER AS A DEFENDANT | 12 |
| | A. Iowa State Law on Statute of Limitations Applies | 12 |
| | B. Adding Becker as a Defendant Does Not Offend the Iowa Statute of Limitations | 12 |

1.     The Discovery Rule Tolled The Statute of Limitations Until Plaintiff Learned the Identity of Becker ......................................... 13

    (a)   *The discovery rule applies when a plaintiff does not know the identity of the proper defendant*......................... 13

    (b)   *Templeton did not have actual knowledge of the newly added parties' roles until December 9, 2021*.................... 15

    (c)   *Plaintiff was not on inquiry notice that the newly added parties were potential defendants* .......................... 15

2.     Equitable Estoppel Precludes Defendants from Asserting the Statute of Limitations as a Defense .............................................. 17

COMES NOW, Plaintiff Nicholas Templeton ("Templeton"), by and through his attorneys, and for his Brief in Support of his Motion to Amend Complaint to Add Officers Andrew Becker, Mathieu Dahlen and Brian Cuppy as Defendants and in support thereof states as follows:

## BACKGROUND FACTS/HISTORY

On May 15, 2019, Nick Templeton was an employee of the Iowa Department of Administrative Services working as a groundskeeper at the Iowa State Capitol complex. (P. App. 000003; Templeton Declaration ¶ 2) On that same day he went to lunch with his mother at the Tasty Taco located near the Capitol. (*Id*. at ¶3) Templeton recalls going to lunch with his mother. He recalls leaving the restaurant to go back to work. (*Id*. at ¶4) His next memory is waking up at Lutheran Hospital. (*Id*.at ¶4-5)

This gap in Templeton's memory is the direct result of a seizure he experienced while driving back to work. (Petition ¶ 15,29,30) As a result of the seizure, he lost control of his Jeep Cherokee and drove into the grass north of Court Avenue near the Hoover Building. Several by-standers saw this happening and called 911 and told that dispatcher that it appeared that the driver was having a seizure. (P,App. 000168) Two Des Moines police officers (Fong and Noble) who were working undercover happened to drive by and saw Templeton's vehicle off the roadway with a group of people near the vehicle trying to communicate with its occupant. (P.App. 000004-000016)

According to Fong and Templeton they had difficulty getting Templeton out of the car. (P. App. 000011-000015) Once out of the car, Fong and Noble described Templeton as "non-compliant" and "resisting." (*Id*.) The reports from Fong and Nobel describe wrestling Templeton to the ground, placing him a prone position and handcuffing him behind his back.

(*Id*.)  Around this time, several officers from the Des Moines Police Department, an Iowa State Trooper (Captain Logsdon) and an officer from the Firth District Department of Corrections (Kness) converge on the scene.  None of these highly trained police officers were able to discern what several members of the public readily understood; that Templeton was having a medical emergency.  Perhaps due to lack of training or just well-engrained cynicism; all law enforcement on the scene simply assumed that Templeton's behavior was the result of illicit drug use.  As a result, Templeton was placed in a prone position, hog-tied with a hobble restraint, a knee placed across his upper back while another officer shoved his feet/ankles toward his wrists.

>The Des Moines Fire Department arrived on the scene and documents the following:
>
>**<u>The patient was hog-tied with his hands and feet cuffed behind his back and then held together with a black strap. There were two police officers lying on top of the patient holding him down against the ground, one was on his back the other on his legs . . .</u>** . While personnel began checking his vitals, I tried speaking with the patient.  He was talking, but reluctant to answer questions.  He stopped talking, but was clearly still breathing.  **<u>Shortly after the color of his face became abnormal, it looked a purplish blue. The patient was no longer resisting the officers lying on him</u>**.  We asked that they get off so we could roll him over.  His respirations were now sonorous.  We ask that PD quickly remove the restraints so we could position him appropriately on our cot in an upright seated position.  His color almost immediately improved and his respirations were adequate and no longer sonorous. (P. App. 000019)

The Des Moines Fire Department records indicate that Officer Fong rode with them to the hospital, but otherwise do not identify any of the other officers involved.  (*Id.*)

During the course of discovery in this lawsuit, it was learned that Officer Andrew Becker applied the hobble restraint and hog-tied Templeton while Officers Mathieu Dahlen and Brian Cuppy were the "two police officers lying on top of [him] holding him down against the ground, one was on his back the other on his legs . . ." (P. App. 000019)  Although required by Des Moines Police Department rules, neither Fong or Noble even mention in their reports that a

4

hobble was used to restrain Templeton. (P. App. 000011-000015) The report filed by Officer Noble does not include the names of any other law enforcement involved in restraining Templeton other than Fong.[1] (P.App. 000011-000012) Noble's report nowhere mentions Officer Becker even being on the scene. Officer Fong's report lists Officers Dahlen and Cuppy as being on the scene, but nowhere states that they were involved in restraining Templeton. (P.App.000013-000015) Fong's report under "Witness Testimony" lists "Becker," but gives no clue as to his involvement. (P.App.000015)

On May 14, 2021, Templeton filed this action against the City of Des Moines and Officers Fong and Noble believing that they were the two officers who "hog-tied" him and were "holding him against the ground" as described in the ambulance report. (Petition ¶ 19-21) Defendants Initial Disclosures provided on August 31, 2021, identified Cuppy and Dahlen and stated that they would "Testify to their recollection of the events that occurred on May 15, 2019. See Body and Car Camera Video." (P.App. 000022-000023) No mention was made of Officer Becker in the Initial Disclosures. (P.App.000021-000026) Templeton propounded interrogatories on both Fong and Noble requesting in various ways the identities and conduct of any other officers on the scene. In early September 2021, Fong and Noble responded to the discovery by referring Templeton to their Initial Disclosures and/or previously produced reports; none of which identified or provided details about Becker, Dahlen or Cuppy's role in restraining Templeton. (P.App. 000033, 000038, 000044, 000062, 000067, 000072)

Plaintiff's Interrogatory No. 15 to Fong/Noble requested a narrative explanation of the events in question and to "include all individuals identified as having information in previous

---

[1] Noble's report states: "Assisting officers from DMPD, State Patrol and Probation & Parole arrived and took control of Templeton. DMFD also arrived shortly after and assisted." Noble's report does mention Officer Cuppy being on the scene, but limits his involvement to completing a driver information exchange with the vehicle that was struck by Templeton's jeep. (P.App. 000012)

answers in the narrative where appropriate. . ." (P.App 000040-000041, 000069-000071)  In response, Fong and Noble regurgitated the factual narrative in the police reports, failed to mention that a hobble restraint was used, failed to identify Becker as the person who applied the hobble or that Dhalen and Cuppy were the two officers on top of Templeton while he was face down against the ground.  (*Id.*)  Finally, Interrogatory No. 24 specifically asked about utilizing a hog-tie on an individual experiencing a seizure or suspected overdose.  Fong and Noble responded in part:  "The issued DMPD restraint was used and applied appropriately by other officers in this case."  Although the request had been made multiple times, neither Fong or Noble identified the "other officers in this case."  (P.App. 000054, 000081)

The Interrogatory answers provided by the City of Des Moines in September 2021 are equally uninformative.  Plaintiff's Interrogatory numbers 2, 8 and 14 all requested details about the officers on the scene and their roles in the arrest of Templeton.  Again, Plaintiff was directed to the Defendant's Initial Disclosures and the Fong/Noble reports which provide no insights into who applied the hobble and actively restrained Templeton after it was applied. (P.App. 000084, 000087, 000090)  Plaintiff propounded a second set of Interrogatories that included a still shot from a body cam depicting Templeton in a hog-tie position with an unknown officer with his knee across his back.  On November 15, 2021, the City responded to this discovery request and identified the officer in question as Mathieu Dahlen.  (P.App.000105)

Although requested in various interrogatories to the City and the individual officers, the City did not disclose the identity of the other two officers involved until December 9, 2021.  In an email dated December 9, 2021, counsel for Templeton inquired:  "I am looking for the specific names of the offices who applied the hogtie/hobble on the date in question.  Noble/Fong's disc. resps. simply state that "DMPD, State Patrol, and Probation & Parole took

6

control of Templeton." (P.App.000109) Counsel for the City responded: "Andrew Becker is the person applying the hobble. The Des Moines officers involved in retraining Templeton after are Fong and Noble are no longer in [sic] touching with [sic] him are Officers Cuppy and Dahlen." (P.App.000108) Plaintiff has since deposed Noble, Fong, Becker, Dahlen, Cuppy and Kness.

Templeton now seeks to add/substitute Officers Becker, Dhalen and Cuppy ("newly added officers") as Defendants. Because Templeton named Fong and Noble as defendants due to a mistake concerning the proper parties' identities, the amendment to add Becker, Dhalen and Cuppy ("newly added parties") relates back to the date the petition was originally filed. *See* Fed. R. Civ. P. 15(c)(1).

In the alternative, Templeton seeks leave to add Officer Becker as a Defendant under the doctrine of equitable tolling. Under Iowa law, the two-year statute of limitations was tolled by the discovery rule because Templeton could not determine the identity of the officer who applied the hobble and hog tied him due to conduct of the defendants. Additionally, equitable tolling also applies to Plaintiff's claim.

## I. AMENDMENT OF PLEADINGS SHOULD BE FREELY GIVEN WHEN JUSTICE SO REQUIRES

"When a plaintiff requests leave to amend his complaint before trial, the court should freely give leave when justice so requires." *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 307 (8th Cir. 2009) (quoting Fed. R. Civ. P. 15(a)(2)). "Permission to amend may be withheld if the plaintiff . . . is guilty of undue delay, bad faith, dilatory motive, or if permission to amend would unduly prejudice the opposing party." *Id.* Additionally, "Futility is a valid basis for denying leave to amend." *Jackson v. Riebold*, 815 F.3d 1114, 1122 (8th Cir. 2016).

In this case, Templeton is requesting leave to amend to add new parties he only recently discovered were the persons responsible for the violations of his civil rights. Templeton discovered the identity and role of Dahlen on November 15, 2021 and that of Becker and Cuppy on December 9, 2021. The recent discovery of these officers and their roles in the unlawful restraint of Templeton is not the result of undue delay, bad faith, or dilatory motive by Templeton or his counsel, but instead is directly attributable to the conduct of Fong, Becker and the City of Des Moines who have obfuscated and hid the ball in an attempt to run out the clock. Additionally, as discussed in Section II(C) *infra*, the Defendants will not be unduly prejudiced by this amendment because they had notice within the time for service provided by Rule 4(m). Finally, because Templeton's claims against the newly added parties does not offend the statute of limitations, as discussed in Sections IV and V *infra*, these amendments are not futile. Justice requires that the Court allow Plaintiff to amend his complaint to add these parties, and leave should be freely given. *See* Fed. R. Civ. P. 15(a)(2).

## II.  UNDER RULE 15(c) THE AMENDED PETITION RELATES BACK TO THE TIME OF FILING

Federal Rule of Civil Procedure 15(c)(1) allows amended pleadings to relate back to the date of the original pleading.

> An amendment which "changes the party or the naming of the party against whom a claim is asserted" relates back if (1) "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading"; (2) "the party to be brought in by the amendment ... received such notice of the action that it will not be prejudiced in defending on the merits"; (3) that party "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity"; and (4) the second and third of these requirements were met "within the period provided by Rule 4(m) for serving the summons and complaint."

*Lee v. Airgas Mid-South, Inc.*, 793 F.3d 894, 897 (8th Cir. 2015) (quoting Fed. R. Civ. P.

15(c)(1)).

### A. Plaintiff's Amended Complaint Arose From the Same Occurrence as his Original Complaint

The first element in this case is easily met. It is clear from the proposed Amended Complaint that the claims against Officers Becker, Dahlen and Cuppy arose out of the same occurrence as the original claim. Plaintiff's original state court petition arose from the arrest and detention of Plaintiff on May 15, 2019. All of the claims against Officers Becker, Dahlen and Cuppy arose out of that same arrest and detention. Templeton has not proposed changing the factual allegations except to note the Officers' roles in the incident. No new causes of action were added. The first element of the relation-back test is satisfied.

### B. Officers Becker, Dahlen and Cuppy had Constructive Notice of this Lawsuit and Should Have Known that, But for a Mistake in Identity, the Action Would Have Been Brought Against Them

The second element and third elements—that Officers Becker, Dahlen and Cuppy had notice of the suit and should have known they would have been sued but for a mistake in identity—are satisfied in this case. Notice can be shown by actual notice or constructive notice. *See Lee v. Airgas Mid-South, Inc.*, 793 F.3d 894, 896 (8th Cir. 2015) (holding that amended complaint did not relate back because defendant lacked "actual or constructive notice" of the suit). Constructive notice can be found under the "identity of interest" doctrine. *See Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008, 1012 (8th Cir. 1991). Under the identity of interest doctrine, "timely notice of the suit to a related entity may be imputed to the proper defendant." *Id.* (quoting *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F.2d 1397 (9th Cir. 1984).

The Fifth Circuit confronted a factually similar case and applied the identity of interest

test in *Jacobsen v. Osborne*, 133 F.3d 315 (5th Cir. 1998). In that case the plaintiff sued a city police department and an individual officer for false arrest and excessive force under section 1983. *Id.* at 317. After filing suit, defendants moved to dismiss the complaint because plaintiff had named the wrong individual officer. *Id.* The plaintiff discovered the identity of the correct officers through discovery and moved to amend his complaint to add the correct officers. *Id.* at 318. Applying the identity of interest test, the Fifth Circuit held that "there was a sufficient identity of interest between the newly-named officers, Officer Osborne, and the City to infer notice." *Id.* at 320. The *Jacobsen* court explained:

> The original complaint was served on the City Attorney, who represented the original City defendants (the City and Officer Osborne) and would necessarily have represented the newly-named officers. The City Attorney answered the complaint on behalf of the City and Officer Osborne and, to do so, presumably investigated the allegations, thus giving the newly-named officers the clause A notice of the action. Consequently, those officers "knew or should have known" that, but for Jacobsen's mistaken belief that Officer Osborne was the arresting officer, the action would have been brought against them, therefore satisfying clause B.

*Id.*

Just as in *Jacobsen*, the City Defendants (City of Des Moines and Officers Fong and Noble) are represented by the City Attorney, who would necessarily represent the newly named officers. The Defendants are represented by the experienced and well-respected attorney John Haraldson. Just as in *Jacobsen*, the Court can safely assume that Mr. Haraldson investigated the allegations of the complaint prior to filing his answer, thus giving the newly-named officers notice of the action satisfying Rule 15(c)(1)(C)(i).

Finally, the mistake in identity of the proper parties is also clear from the facts alleged in the original state court Petition. In the Petition, Templeton alleged that Officers Fong and Noble hog-tied Plaintiff "with his hands and feet cuffed behind him with the hand/feet held together

with a black strap." (Petition ¶ 19) Templeton alleged that "While in the prone 'hog-tied' position, Noble and Fong were lying on top of him applying their body weight to Templeton's back and legs." (*Id.* ¶ 20.) It was also alleged that "While in the prone 'hog-tied' position, Templeton repeatedly told Noble and Fong that he couldn't breathe. Despite his pleas, neither Fong or Noble stopped applying their body pressure to Templeton or moved him from the prone hog-tied position." (*Id.* ¶ 20) Just as in *Jacobsen*, Officers Becker, Dahlen and Cuppy knew or should have known' that, but for Templeton's mistaken belief that Officers Fong and Noble hog-tied and nearly killed him, they would have been named as Defendants in the action. This satisfies clause B. *See Jacobsen*, 113 F.3d at 320; Fed. R. Civ. P. 15(c)(1)(C)(ii).

### C. The Second and Third Prongs Were Satisfied Within 120 days of Plaintiff Filing Suit

The final requirement for relation back is that the second and third prongs must have been satisfied "within the period provided by Rule 4(m) for serving the summons and complaint[.]" Rule 4(m) provides 90 days for the serving of the summons and complaint. Fed. R. Civ. P. 4(m). Templeton filed his Petition on May 14, 2021 in the Iowa District Court for Polk County. In this case, notice is imputed to the newly named officers through Defendants' investigation of the allegations made in the Petition. Defendants removed the case to this court and filed their Answer on June 25, 2021; within 90 days of the filing of the state court Petition. Therefore, Officer Becker, Dahlen, and Cuppy had notice of Plaintiff's suit, and should have known that but for a mistake in identity they would have been sued, within the time period provided by Rule 4(m).

Plaintiff has satisfied all of the elements of Rule 15(c) required for the Amended Complaint, which substitutes Officers Becker, Dahlen and Cuppy for Fong and Noble as

11

Defendants, which relates back to the timely filed state court Petition.

### III. IOWA LAW ON TOLLING THE STATUTES OF LIMITATIONS ALLOWS PLAINTIFF TO ADD OFFICER BECKER AS A DEFENDANT

#### A. Iowa State Law on Statute of Limitations Applies

"Section 1983 claims are governed by the personal injury statute of limitations of the state where the claim arose." *Bridgeman v. Nebraska State Pen*, 849 F.2d 1076, 1077 (8th Cir. 1988); *Crozier for A.C. v. Westside Community School District*, 973 F.3d 882, 888 (8th Cir. 2020). "The use of a state's statute of limitations also requires the use of its tolling statutes and the operation thereof is governed by state law." *Bridgeman v. Nebraska State Pen*, 849 F.2d 1076, 1078 (8th Cir. 1988); *Crozier for A.C. v. Westside Community School District*, 973 F.3d 882, 888 (8th Cir. 2020). Therefore, Iowa two-year statute of limitations as well as Iowa law on tolling the statute of limitations applies to Templeton's section 1983 claim.

State law on statute of limitations also applies to Count II, negligent supervision and retention. Negligent supervision and retention is based on Iowa common law, and the Court should apply the substantive law of Iowa to this claim. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (holding that state substantive law applies federal courts adjudicating state law claims). Law and decisions on statutes of limitations is substantive law. *See Guarnaty Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945) (holding that statutes of limitations may completely bar recovery, making them substantive laws that federal courts should apply when adjudicating state law claims). Accordingly, this Court should apply Iowa law regarding the statute of limitations to Count II.

#### B. Adding Becker as a Defendant Does Not Offend the Iowa Statute of Limitations

The statute of limitations for personal injury claims in Iowa is two years. Iowa Code §

614.1(2) (2021). However, Iowa law allows equitable tolling of the statute of limitations. *See Mormann v. Iowa Workforce Development*, 913 N.W.2d 554, 566 (Iowa 2018). "[E]quitable exceptions to the limitations statutes are common in Iowa." *Id.* Two of these equitable tolling exceptions apply to Plaintiff's claims against Becker. First, Templeton did not know the identity of the officer who hog-tied him. Therefore, the discovery rule tolled the limitations period until Plaintiff learned Becker's identity in December 2021. *See Hook v. Lippolt*, 755 N.W.2d 514, 522-23 (Iowa 2008). Second, because Defendants concealed the role and/or identity of Becker, equitable estoppel prevents them from asserting the statute of limitations as a defense. *See DeWall v. Prentice*, 224 N.W.2d 428, 431 (Iowa 1974).

      **1.**      <u>**The Discovery Rule Tolled The Statute of Limitations Until Plaintiff Learned the Identity of Becker**</u>

            a)    *The discovery rule applies when a plaintiff does not know the identity of the proper defendant*

Under the Iowa discovery rule, "the statute of limitations does not begin to run until the injured person has actual or imputed knowledge of all the elements of the cause of action." *Hook v. Lippolt*, 755 N.W.2d 514, 521 (Iowa 2008). One of the essential elements of the cause of action is the identity of the defendant. *See id.* The Supreme Court in *Hook v. Lippolt* succinctly summarized the steps used in analyzing the application of the discovery rule to a plaintiff's claims:

> [T]he initial step in our analysis is to determine whether the undisputed facts establish as a matter of law when [plaintiff] had actual knowledge of the elements of her claims against [defendant] and the State or when she knew enough to be charged with a duty to inquire. If we conclude Hook had enough knowledge to be charged with a duty to investigate more than two years prior to filing this suit, we must then examine whether, as a matter of law, a reasonably diligent investigation would have disclosed the elements of her claims. If a reasonably diligent investigation would have disclosed the elements of her claims against Lippolt and the State, she is charged with that knowledge as of the date her duty to investigate

13

arose.

*Hook v. Lippolt*, 755 N.W.2d 514, 522 (Iowa 2008).

The plaintiff in *Hook* was injured in a car accident caused by the individual defendant Lippolt. *Id.* at 517. At the time of the accident Lippolt was working as a volunteer for the State of Iowa. *Id.* The plaintiff originally filed a lawsuit against Lippolt individually. Lippolt answered the initial interrogatories sent by the plaintiff and disclosed that Lippolt was acting as an agent of the state at the time of the accident. *Id.* at 518. More than two years after the accident, the plaintiff refiled against Lippolt and the State under the State Tort Claims Act. *Id.*

The defendants in *Hook* moved to dismiss the claim based on the statute of limitations. The plaintiff argued that the discovery rule tolled the statute of limitations until she discovered, through her initial suit, that Lippolt was acting as a state agent. *Id.* The Iowa Supreme Court analyzed the discovery rule in this context, showing that the discovery rule may apply when a plaintiff does not know the identity of the correct defendant. *Id.* at 522-23. The Iowa Supreme Court ultimately held that the discovery did not save plaintiff's case because it was undisputed that plaintiff "had actual knowledge of all the elements of her claim against Lippolt immediately after the June 9, 2000 accident. . . " *Id*. at 522.

In this case, Templeton knew (primarily from the DMFD ambulance report) that he had been hog-tied and that two police officers were lying on top of him "holding him down against the ground." (P.App.000019) Based on Noble and Fong's reports he knew that they removed him from the his car and handcuffed him. There is nothing in the police or ambulance reports that would have put Templeton on notice, actual or constructive, that Becker applied the hobble and Cuppy and Dahlen were the two officers holding him to the ground.

> b) *Templeton did not have actual knowledge of the newly added parties' roles until December 9, 2021*

Templeton was suffering from a medical emergency on May 15, 2019. He has no recollection of any interaction with the police on the capitol grounds that day. (P.App. 000003; Templeton Declaration ¶ 5) Templeton recalls leaving Tasty Taco's after having lunch with his mother and then waking up in the hospital. (Id.at ¶4) He had no knowledge of the identity or the role of any officers in his arrest except for Fong, who questioned him at the hospital. (Id. at ¶4-5) The reports completed by Noble and Fong failed to mention that a hobble restraint was used on Templeton. Noble's report fails to mention that Becker was even on the scene that day. (P.App. 000011-000012) Fong's report makes a passing reference to "Becker," but gives no clue as to his involvement. (P.App. 000015)

> c) *Plaintiff was not on inquiry notice that the newly added parties were potential defendants*

When considering whether a party is on inquiry notice, the court first determines whether the undisputed facts establish that the plaintiff knew enough to be charged with a duty to inquire. *Id.* at 522. Next, the Court examines "whether, as a matter of law, a reasonably diligent investigation would have disclosed the elements of [his] claims. If a reasonably diligent investigation would have disclosed the elements of her claims against [the defendants], she is charged with that knowledge as of the date her duty to investigate arose."

In this case, a reasonably diligent investigation would not have disclosed that Officer Becker was the individual responsible for hog-tying Templeton. As discussed above, the police report and medical records available to Templeton pre-suit made a fleeting reference "Becker", but did not disclose his full identity or his role in applying a hobble restrain. The report from the Des Moines Fire Department documents that Templeton was hog-tied and officers were on top of

him holding him to the ground. However, that report does not identify who hog-tied him or otherwise identify the officers who were on top of him.

Templeton's ability to conduct a reasonably diligent investigation concerning who was involved in the excessive use of force was frustrated by the City's failure to follow its own rules. Templeton requested a 30(b)(6) deposition seeking, *inter alia*, the person most knowledgeable concerning training, guidelines and expectations regarding use of force specifically with regard to use of the hobble restraint. (P.App 000112-000114) The City chose Officer Becker as its designee. Becker admitted in his deposition that he had a good working knowledge of such matters and understood that his testimony was binding on the City. (P.App.000141; Becker Dep. 12-13) On November 15, 2021, the City produced a PowerPoint presentation used at the training academy titled: "In-Custody Deaths and Asphyxiation." (P.App. 000115-000137) Becker has taught this course at the training academy since 2016. (P.App. 000144; Becker Dep. 22-23) The PowerPoint contains a heading "Documentation" and states: "The use of a hobble tie **shall** be appropriately documented in the officers CIR[2] or Supplemental Report." (P.App.000126)(emphasis added). Becker explained why this documenting requirement exists: "Kind of like I stated earlier, because of that use of force allowed, you're notifying your supervisor of it, you're documenting it for that – so that purpose of documenting that use of force has gone past simply handcuffing someone." (P.App.000147; Becker Dep. p. 35)

If the City and its officers had followed its own training and rules, Fong and/or Noble would have documented the use of the hobble restraint including who applied it. This would have placed Templeton on inquiry notice. The City and Becker should not benefit by their conduct, intentional or not, of not following their own rules particularly when it deprives

---

[2] Case Investigation Report

Templeton of the ability to determine exactly who was involved in violating his civil rights.

Plaintiff served an Interrogatory on both Defendant DMPD and Defendant Fong asking them to "describe in narrative fashion how Defendant believes the 5/15/2019 incident identified in Plaintiff's petition occurred."  In response, Officer Fong copy and pasted the narrative section of his report. (P.App 000040-000042)  Officer Noble answered a similar interrogatory in the same way, by copying and pasting the narrative section of his report. (P.App. 000069-000071) The DMPD answered this interrogatory by referring to Defendant Fong and Noble's answers to the same interrogatory. (P.App. 000089)   As discussed above, the information from the police report in no way identifies Officer Becker as the person who hog-tied Templeton.

None of Defendants' discovery responses, nor any of the videos produced by Defendants',[3] allowed Plaintiff to identify the officer responsible for applying the hobble restraint.  It was not until December 9, 2021, when counsel for Plaintiff asked to depose the officer who placed the hobble on Templeton, that counsel for Defendants identified Officer Becker's role in this incident.

### 2. Equitable Estoppel Precludes Defendants from Asserting the Statute of Limitations as a Defense

Equitable estoppel is separate and distinct from the discovery rule.  Equitable estoppel "does not affect the running of the statutory limitations period; rather, it estops a defendant from raising a statute-of-limitations defense." *Christy v. Miulli*, 692 N.W.2d 694, 701 (Iowa 2005). The key inquiry in equitable estoppel is the Defendants' conduct, not the Plaintiff's knowledge of the facts. *See Mormann v. Iowa Workforce Development*, 913 N.W.2d 554, 577 (Iowa 2018). "[E]ven when a party has knowledge of a prima facie case, the defendant's misrepresentations

---

[3] The body camera footage of Officers Dahlen and Crouse can be found at P.App.000168.

that he knows or should have known would lull the [plaintiff] into inaction may provide a vehicle to toll the running of the filing limitation under the equitable estoppel doctrine." *Benskin, Inc. v. West Bank*, 952 N.W.2d 292, 304 (Iowa 2020). "[T]he circumstances justifying an estoppel end when the plaintiff becomes aware of the fraud, or by the use of ordinary care and diligent should have discovered it." *Id.*

In order to establish fraudulent concealment that estops a defendant from asserting the statute of limitations, the plaintiff must show by a clear and convincing preponderance of the evidence the following: (1) defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representation; and (4) the plaintiff did in fact rely upon such misrepresentation to his prejudice. *Muili*, 692 N.W.2d at 702.

In this case, Fong and Noble failed to follow their training and the City's own procedure by failing to even mention that a hobble restraint was used. They also concealed by omission the identity of the officer who applied the hobble. Given Templeton's medical condition at the time these events occurred, he did not possess nor could he possess knowledge about who hog-tied him as described in the DMFD ambulance report. The only reason Fong and Noble would have not followed their training and department procedures was to protect to Becker and prevent Templeton from naming the correct defendants. The pending motion for summary judgement seeking dismissal of Templeton's entire case for naming the wrong defendants underscores that the relied on such misrepresentations to his detriment.

WHEREFORE, Plaintiff Nicholas Templeton respectfully requests this Court to grant his Motion to Amend Complaint to add Officers Andrew Becker, Mathieu Dahlen and Brian Cuppy as Defendants.

*/s/ Thomas J. Duff*
*/s/ Jim T. Duff*
DUFF LAW FIRM, PLC
The Galleria
4090 Westown Pkwy, Suite 102
West Des Moines, Iowa 50266 (515) 224-4999

jim@tdufflaw.com tom@tdufflaw.com

*/s/ Benjamin K. Lynch*
Benjamin K. Lynch, AT0013089
The Law Offices of Benjamin K. Lynch, PLC 8550
Hickman Road, Clive, Iowa 50325
(515) 276-3921
ben@benlynchlaw.com
**ATTORNEY FOR PLAINTIFF**


Original electronically filed with copies to:

JOHN O. HARALDSON
Assistant City Attorney
City Hall, 400 Robert D. Ray Dr.
Des Moines, Iowa 50309-1891
Email: JOHaraldson@dmgov.org

ATTORNEY FOR DEFENDANTS