IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| NICHOLAS TEMPLETON,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF DES MOINES, IOWA;<br>ANDREW BECKER, MATHIEU DAHLEN<br>and BRIAN CUPPY, in their individual and<br>official capacities,<br><br>    Defendants. | Case No. 4:21-cv-188<br><br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

COME NOW the Defendants City of Des Moines, Iowa, Andrew Becker, Mathieu

Dahlen and Brian Cuppy and provide the following Brief in Support of their Motion for

Summary Judgment in this matter:

## TABLE OF CONTENTS

SUMMARY OF FACTS…………………………………………………………. 2

SUMMARY OF ARGUMENT ………………………………………………….. 2

STANDARDS IN SUMMARY JUDGMENT CLAIMS………………………… 3

ARGUMENT……………………………………………………………………5

I.    THE PLAINTIFF CANNOT PREVAIL ON HIS CLAIM OF EXCESSIVE
      FORCE AND DEFENDANTS ARE IMMUNE FROM SUIT…………….…. 5

      A.    Plaintiff cannot prevail under the Fourth Amendment Claim of Excessive
            Force As the Defendants' actions were Objectively Reasonable under
             the Totality of the Circumstances…………………………………………5

II.   PLAINTIFF'S CLAIMS ARE TIME-BARRED………………………………26

III.  THERE IS NO VALID CLAIM OF NEGLIGENT HIRING, SUPERVISION
      OR RETENTION IN THIS MATTER………………………………………. 28

CONCLUSION………………………………………………………………..29

## SUMMARY OF FACTS

The Defendants have filed a separate Statement of Facts in support of their Motion for Summary Judgment and incorporate it herein.

A review of the available evidence before the court shows the record of events of the entirety of the claim of excessive force is before the court. While the Plaintiff has no recollection of the events, the record is replete with contemporaneous evidence showing the course of events.

The case incident reports, and supplemental reports composed shortly after the event, the audio of a call to dispatch flow into the body camera video of Officer Dahlen and Sergeant Crouse to provide a full picture of events.  These document that the named defendants did not perform the acts the Plaintiff asserted in paragraphs 16 through 25 of his Petition comprising the excessive force claim.

The uncontroverted evidence demonstrates the charges against the Defendants should be dismissed in their entirety with the common law supervision claim also requiring dismissal.

## SUMMARY OF ARGUMENT

The Plaintiff filed this suit on May 14, 2021, one day before the applicable statute of limitations would run upon claims which arose on May 15, 2019. See, Iowa Code §§614.1, 670.

The Plaintiff originally named as individual defendants Officers Michael Fong and Jason Noble.  (Dkt. 1 to 3) The Defendants moved for Summary Judgment upon those officers on December 7, 2021.  (Dkt. 15).  On February 7, 2022, the Plaintiff moved to Amend the Complaint to dismiss Fong and Noble and replace them as defendants with Andrew Becker, Mathieu Dahlen and Brian Cuppy, all the Des Moines Police Department which remained a defendant.  (Dkt. 18)

On February 7, 2022, the magistrate allowed the Amended Complaint to be filed.  (Dkt. 32)  While allowing the Amended Complaint to be filed, the magistrate deferred from ruling upon

the Defendants' assertions related to issues such as the applicable statute of limitations, leaving the issue for the District Court in any subsequent dispositive motion.  (Dkt. 32, Order of March 28, 2022, pg. 10)  The defendants reassert these issues against the newly named Defendants as being time-barred under the applicable statute of limitations, Iowa Code §614.1 and §670.5 (the latter related to state-based claims).

Further, the named Defendants did not violate the Plaintiff's Constitutional rights, nor did their actions constitute an inappropriate use of force under State or common law. As such, the claims fail on either their merits, or upon the basis of qualified immunity.

Summary Judgment should therefore be granted to the Defendants and the Plaintiff's claims dismissed with prejudice.

## STANDARDS IN SUMMARY JUDGMENT CLAIMS

Summary judgment is appropriate when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

The threshold inquiry is whether there are genuine factual issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Further this matter involves the defense of qualified immunity. Such immunity is an entitlement not to stand trial, not a defense from liability. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 2155-56, 150 L.Ed.2d 272 (2001); *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The Eighth Circuit has stated that a motion for summary judgment on qualified immunity grounds is only precluded when the plaintiff (1) asserts a violation of a constitutional right; (2) demonstrates that the alleged right is clearly established; and (3) raises a

genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiffs clearly established right. *Lawson v. Hulm*, 223 F.3d 831, 834 (8th Cir. 2000)(quoting *Goff v. Bise*, 173 F.3d 1068, 1072)(8th Cir. 1999).

On a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* The non-movant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* To show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). There must be evidence upon which the jury could conceivably find for the non-movant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

The burden on the moving party is only, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out the assertion. Once this is done, the burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted. *Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

The non-moving party may not rest on the allegations in its pleadings but must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1029 (8th Cir.2000); *Allen v. Entergy Corp.,* 181 F.3d 902, 904 (8th Cir.1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring,* 207 F.3d at 1029 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a tri-able question of fact, see *Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir.2004), and "must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." *Davidson & Assocs. v. Jung,* 422 F.3d 630, 638 (8th Cir.2005).

## ARGUMENT

I.  **THE PLAINTIFF CANNOT PREVAIL ON HIS CLAIM OF EXCESSIVE FORCE AND DEFENDANTS ARE IMMUNE FROM SUIT**

A.  <u>Plaintiff cannot prevail under the Fourth Amendment Claim of Excessive Force As the Defendants' actions were Objectively Reasonable under the Totality of the Circumstances</u>

A claim that a police officer used excessive force in the course OF arrest, or any other form of seizure are analyzed for qualified immunity purposes under the reasonableness standard of the Fourth Amendment. *Graham v. Conner*, 490 U.S. 386, 395 (1989). The reasonableness of the

force used requires "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id*. at 396. The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

In such cases the question is whether the force used was "objectively reasonable in light of the facts" before the officers at the time. *Id*. at 397. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Id*. at 396.

Qualified immunity protects government officials from suit under federal law claims if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The protection applies regardless of whether the government officials' error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Defendants are "entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to [the plaintiff], establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable official would have known that his actions were unlawful." *Blazek v. City of Iowa City*, 761 F.3d 920, 922 (8th Cir. 2014), citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), see also *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019), *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014). The answer to both questions must be in the affirmative for qualified immunity to be denied. *Pearson* 555 U.S. at 232 (2009).

6

"A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Riechle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S.731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011), see also *Mullenix v. Luna*, -- U.S. --, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015). Isolated decisions by a district court, or even an appellate court of another jurisdiction, do not equate to "sufficiently clear" to settle the constitution question as to an excessive use of force. See, *Richele*, 132 U.S. at 2094.

Under the first prong, "violation of a right, the court is to consider whether a constitutional violation happened. See, *Jackson v. Stair*, 944 F.3d 704, 710–11 (8th Cir. 2019). At summary judgment, the court "address[es] whether [the plaintiff] has presented evidence from which a reasonable jury could conclude that the Officers violated [the plaintiff's constitutional] right." *Lombardo v. City of St. Louis*, 956 F.3d 1009, 1013 (8th Cir. 2020). In doing so, courts "'must assess the actions of each officer from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.'" See, *Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017)).

Regarding the second prong of the qualified immunity analysis, the "clearly established right" prong, the question posed must be beyond debate. *Jackson v. Stair*, 944 F.3d 704, 711 (8th Cir. 2019) "We have repeatedly told courts…not to define clearly established law at a high level of generality." *Mullenix v. Luna*, -- U.S. --, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015), quoting *Ashcroft v. al-Kidd*, 563 U.S.731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). The dispositive question is "whether the particular conduct is clearly established." *Id*. This inquiry must be

undertaken in the specific context of the case, not a broad general proposition. *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). Here, the conduct of the officers is well-established law under the Fourth Amendment.

To avoid summary judgment, a plaintiff must identify controlling authority on the issue or demonstrate that a robust consensus of cases of persuasive authority' that 'placed the statutory or constitutional question beyond debate' at the time of the alleged violation." *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (en banc) (quoting *Al-Kidd*, 563 U.S. [731,] 741-42, 131 S.Ct. 2074 [(2011)]. "A plaintiff's failure to identify a case where an officer acting under similar circumstances was held to have violated the [Constitution] is often fatal to a claim outside of obvious cases." *K. W. P. v. Kansas City Public Schools*, 931 F.3d 813, 828 (8th Cir. 2019). Again, this assessment much be done with a high degree of particularity to the facts of the specific case. *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (*per curiam* ) (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Under the "violation of a right" prong it has been established in the Eighth Circuit that the use of a hobble-tie for a resistant individual is not unconstitutional and, in and of itself, by its use is not violative of a constitutional right. *Maynard v. Hopwood*, 105 F.3d 1226, 1227-28 (8th Cir. 1997). Further, in the wake of the *Lombardo* the officers did not violate any constitutional right as the defendants have established the evidence, even when shown in the best possible light by the plaintiff does not demonstrate the defendants violated the tenets of *Kingsley*. See, *Lombardo* 141 S.Ct. at 2241, citing *Kingsley v. Hendrickson*, 576 U.S. 389, 37, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015). Mr. Templeton asserts that Officers Becker, Dahlen and Cuppy used excessive force against him in a seizure, though the evidence shows the acts Templeton claims were not excessive force.

The evidence in this case is undisputed as to the situation that initially confronted by officers no longer parties in this case, Michael Fong, and Jason Noble.  While the initial contact is not recorded by body cam, the record of Fong and Noble to the events giving rise to this suit and the dispatch recordings are the only record present, as Nicholas Templeton has no recollection of any of the events given rise to this matter.  Mr. Templeton recalls hugging his mother after lunch at a nearby restaurant and then has no recollection of events until he was in the hospital after these events occurred.

As stated in the Defendants' Statement of Undisputed Facts, Templeton had a seizure of some kind causing him to drive his car erratically and eventually caused a low-impact collision in a parking lot east of the State Capitol building.  Individuals in the parking lot phoned the police dispatch to report the issue.  At the same time Michael Fong and Jason Noble, a pair of Des Moines police officers who were working undercover, saw the disturbance and felt obligated to investigate. The officers proceeded to park behind Templeton's vehicle, got out, and requested Templeton speak to them.  Templeton did not do so and instead continued to be behind the wheel of his car with the engine on and in "drive".  Templeton, was non-compliant state and repeatedly locked and unlocked his doors when the officers attempted to open the doors.

Eventually, the officers were able to coordinate their movements to get into the car when it was unlocked.  Officer Fong attempted to enter the cab only to have Templeton kick his chest. Fong then got past Templeton's defenses and placed himself between the Plaintiff and the steering wheel where Fong was able to place the car in park.  The officers then extracted Templeton from the car and placed him on the ground.

The entire time Templeton continued to fight the officer and resist commands.  Both Fong and Noble obtained minor injuries attempting to control Templeton.  Witnesses even assisted the

officers in trying to place Templeton in handcuffs.   Templeton fought Officers Fong and Templeton throughout this period.

Eventually other officers arrived, including Officer Dahlen whose body camera demonstrated that Templeton continued to fight, and resist attempts to calm Templeton down.

Those opening moments are not in dispute.

What is at issue is whether the efforts of Offices Dahlen, Cuppy and Becker in the use of the hobble-tie and restraint of Templeton violated the latter's rights in using excessive force not reasonable to the facts they were facing.

It is notable that this case involves restraint, in particular a hobble-tie, in the wake of the Supreme Court's decision last year, *Lombardo v. City of St. Louis, Missouri*, 141 S.Ct. 2239 (2021). *Lombardo* involved the use of a force that included holding a prone individual down – albeit unlike the present case one that (a) resulted in death (b) involved four officers holding down a responsive individual (c) the pinning of the individual lasted 15 minutes which was shown to be the contributing factor to the death.  *Id*. at 2240.

In *Lombardo* the court found that in assessing excessive force courts cannot apply the *Graham* standard mechanically.  Id. at 2241, citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015).  Rather, courts are to pay "careful attention to the facts and circumstances of each particular case." *Graham* at 396.  These circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

Qualified immunity shields a government official, like Officers Dahlen, Cuppy, and Becker from suit under § 1983 if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

When qualified immunity is invoked, the burden falls on the plaintiff to show that (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional right and (2) the right was clearly established at the time of the deprivation. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014) If the answer to either question is no, the defendant is entitled to qualified immunity. *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010)).

For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would have understood that what they were doing violates that right. *Quraishi v. St. Charles County, Mo.*, 986 F.3d 831, 835 (8th Cir. 2021) (citation omitted). The state of the law at the time of the alleged violation – articulated by precedent, controlling authority, or a robust consensus of persuasive authority – must give officials fair warning that their conduct was unlawful. *Id.*

To defeat the defense of qualified immunity in a Fourth Amendment excessive force, context, Mr. Templeton must demonstrate that his right to be free from Defendants' particular use of force, was clearly established at the time of the incident. *Shelton v. Stevens*, 964 F.3d 747, 753 (8th Cir. 2020).

Similarly, under Iowa Code §670 the Defendants are immune from liability commonly known as discretionary-function immunity. See, Iowa Code §670.4(1)(c).  This exempts officers

from liability for any claim based on "an act or omission of an officer or employee of the municipality, exercising due care ... or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion is abused." Iowa Code §670.4(3) (2001); *see City of Cedar Falls v. Cedar Falls Comm. Sch. Dist.,* 617 N.W.2d 11, 18 (Iowa 2000).

In *Baldwin*, the Iowa Supreme Court held that a City may be immune from liability if officers "exercised due care in executing an ordinance." *Id.*, 929 N.W.2d at 698. *Baldwin*'s analysis arose out of **Iowa Code § 670.4(1)(c)**, which grants immunity against claims "based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation ..." *Id.*

Notably and by contrast, on July 17, 2021 the Iowa Code was amended with respect to qualified immunity as Iowa Coe §670.4A which grants immunity if "[t]he right, privilege, or immunity secured by the law was not clearly established at the time of the alleged deprivation, or ... the state of the law was not sufficiently clear that every reasonable employee would have understood that the conduct alleged constituted a violation of law." This language, on its face, is noticeably different than the prior language of **§ 670.4(1)(c)** as construed by the Iowa Supreme Court in *Baldwin.* In enacting §670.4A the Iowa Legislature was adopting a state law version of qualified immunity that tracks the qualified immunity doctrine as it exists under federal law. ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

Again, as stated above, the evidence in this matter is uncontroverted that defendants claimed actions that comprise the Plaintiff's excessive force claim violated plaintiff's rights. The

application of force against the Plaintiff was not in violation of any clearly established right.

To the extent there is the use and application of a "hobble-tie" the Eighth Circuit has found its use per se does not constitute excessive force against a resistant individual. See, *Maynard v. Hopwood*, 105 F.3d 1226, 1227-28 (8th Cir. 1997)(use of handcuffs and hobble restraint objectively reasonable) Here, like in *Maynard*, the hobble restraint was utilized by officers when Templeton was kicking at officers and others among other resistant acts and a danger to the officers, medics, or himself. The use of the hobble restraint in such conditions was consistent with the applicable law. *Id*.

As of the date of this matter, one case discussed in detail the use of the hobble restraint in a critical fashion and its use by Des Moines police officers.  In *Cruz v. City of Laramie, Wyo*., 239 F.3d 1183 (10th Cir. 2001) a discussion of the hobble was elaborated.

In *Cruz* an individual having a psychiatric issue who was non-compliant was eventually tackled to the ground and handcuffed and restrained with a "hog tie" by officers and left face down. The arrestee died during the arrest and the plaintiff asserted that the hobble restraint was applied so that the arrestee's feet and hands were fastened a foot or less apart for a prolonged period while the arrestee was face down.  *Cruz*, 239 F.3d at 1186.  As *Cruz* discusses, the use of a hobble restraint where the individual's feet and hands are fastened a foot apart or less is often referred to as a "hog-tie".  *Id*.

This limits on a broad interpretation of *Cruz* were enunciated in a subsequent case in the 10th Circuit:

> No Supreme Court case is directly on point and the only relevant opinion from this circuit is *Cruz*. However, by its express terms *Cruz* applies only to hog-tying individuals with apparent diminished capacity. 239 F.3d at 1188. A hog-tie is a restraint technique whereby a person's hands are cuffed behind his back, his feet are bound together, drawn up behind his back and attached to the handcuffs. It results in his ankles being bound to his handcuffed wrists behind his back with

twelve inches or less of separation. *Id*. A similar technique is referred to as hobbling. *Id*. at 1188 n. 14. The only difference between the two techniques is the distance between ankles and handcuffed wrists; a separation of twelve inches or less is a hog-tie, a greater distance is a hobble. *Id*. The trial court in *Cruz* found the distance to be twelve inches or less, a fact we credited and used to focus our analysis only on the hog-tie technique. *Id*. at 1188…

In *Cruz* we expressly did not forbid all hog-ties let alone the less restrictive hobble.

-See, *Weigel v. Broad*, 544 F.3d 1143, 1170 (10th Cir. 2008)(J. O'Brien dissenting)

As of May 2019, no other case in the Eighth Circuit had addressed the issue of the hobble restraint other than *Maynard*, the City of Des Moines trains its officers using the *Cruz* decision as a tool in the proper application of the hobble tie.  (See City's Statement of Facts ¶60).

And the officer provided body camera shows that the hobble restraint applied to Templeton complied with that training. The body camera shows that the hobble restraint applied to Templeton was approximately two feet in distances between his hands and feet. (City's SOF ¶77)

There was admittedly a brief instance where some physical restraint was applied to Templeton and the hobble, and when officers Dahlen and Cuppy placed the distances of the restraint less than two feet apart with their hands.  (City's SOF ¶96)  But this was done during the presence of paramedics, was brief, occurred before Templeton was briefly non-responsive and was being resistant. (Id.)

This brief period of restraint was not in violation of the tenets of *Cruz*.  There was no violation of a clearly established law in the application and use of the hobble restraining device.

Though not having been decided at the time this matter was filed, during the pendency of this case a case involving use of force and restraints under the Fourth Amendment from the Eighth Circuit was discussed by the Supreme Court. There a case arising from St. Louis through the Eighth Circuit discussed issues relevant to this matter.  An individual arrested for trespassing and failing to appear in court for a traffic offense was placed in a holding cell of the St. Louis police

department. *Lombardo v. City of St. Louis*, 141 S.Ct. 2239, 2240 (2021).  It appeared to an officer that the arrestee was going to attempt to hang himself.  *Id*.  Three officers then entered the cell and handcuffed the arrestee's arms behind his back, then placed him in leg shackles by two additional officers.  *Id*.  Ultimately six officers were in the arrestee's cell with the latter handcuffed and shackled the legs when they placed the arrestee in a prone-position, face down on the floor.  *Id*. Three officers held the arrestee's limbs down while another placed pressure on the arrestee's back and torso *for 15 minutes*.  *Id*.  Ultimately during these fifteen minutes the arrestee stopped breathing and died.  *Id*.

The district court and Eighth Circuit Court of Appeals found for the Defendants and granted a motion for summary judgment.

The Supreme Court vacated the judgment but did not find that upon consideration of the proper factors, that the appellate court could not find for the defendants again.  The basis of the Court's decision was the way the Eighth Circuit failed to consider each of the six factors it had outlined in a previous excessive force decision.  Id. at 2241, citing *Kingsley v. Hendrickson*, 576 U.S. 389, 37, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015).  In particular, the Eighth Circuit, the Court noted, had determined that if an arrestee resists officers attempt to subdue them – regardless of other circumstances – that such restraint would always be constitutional.  *Id*. at 2241, citing *Lombardo v. City of St. Louis*, 956 F.3d 1009, 1013-15 (8th Cir. 2020)  The Eighth Circuit on remand was told to consider all six factors provided in *Kingsley*. See, *Lombardo*, 141 S.Ct. at 2241.

The Court reiterated the six factors to be considered in a case such as the present matter: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonable perceived by the officer; and

whether the plaintiff was actively resisting.  *Id*. citing *Kingsley* 576 U.S. at 397.  The factors are not to be applied mechanically and should be used to look at the particular facts of each case. *Lombardo*, 141 S.Ct. at 2241, citing *Graham*, 490 U.S. at 396.

In this case a review of the facts and circumstances facing the officers and the nature of the restraint demonstrate that summary judgment should be granted.  This includes body camera footage from the officers.   Courts are entitled to rely upon video evidence which clearly demonstrates the accuracy, or inaccuracy, of the facts upon which the plaintiff asserts in a claim under the Fourth Amendment. See, *Scott v. Harris*, 550 U.S. 372, 3789-80, 127 S.Ct. 1769, 1775-76, 167 L.Ed.2d 686 (2007); *Ranson v. Grisafe*, 790 F.3d 804, 807 (8th Cir. 2015); *Hayden v. Green*, 640 F.3d 150, 153-54 (8th Cir. 2011). Iowa courts have also adopted this logical use of video evidence of contested events in similar claims. See, *Brosnam v. Woodman*, 939 N.W.2d 123 (table), 2019 WL 3721348 *3 (Iowa Ct. App. 2019)

(i)      Relationship between the need for the use of force and amount of force used:

The record is uncontroverted that from the beginning Templeton fought officers, resisted attempts to control him, and repeatedly failed to follow instructions or stop resisting the process of his arrest. Whether he consciously recalls this is immaterial as the contemporaneous record is uncontradicted.

Fong and Noble flashed their badges at the individuals near Black Jeep SUV as well as notifying them they were the police.  (City's SOF ¶22) Fong and Noble were notified by at least one of the nearby witnesses the vehicle was still in gear. (City's SOF ¶23)

Noble made eye contact with Templeton, and the latter appeared to be in an altered state of mind. (City's SOF ¶24)

Templeton was not complying with the instructions of officers to open his door and rather

than unlocking the doors, kept  holding the door shut and pressing the lock button on the driver's door. (City's SOF ¶29) However at one point, Noble was able to grab the top of the driver's door with his left hand and attempted to pull the door open. (City's SOF ¶30)

When Noble attempted to open the driver's side door Templeton pulled the driver's door shut and the tip of Noble's middle finger got slammed in the door. (City's SOF ¶32) Officer Fong was able to open the front passenger door of the Jeep as Noble moved towards the passenger side of the Jeep. (City's SOF ¶33) When the passenger door opened, Templeton, who had positioned his back against the driver's-side door, kicked Fong in the chest area pushing him backwards. (City's SOF ¶34)        Eventually, Fong was able to get back in the car and pin Templeton's shins to the passenger seat, he crawled over the top of Templeton in the cab of the car and wedged his body between Templeton and the steering wheel putting the car in "park". (City's SOF ¶33-35)

Noble moved around to the driver's side and Fong opened the driver's door from inside and the officers were able to pull Templeton out of the vehicle onto the parking lot. (City's SOF ¶39) Fong used his upper body and left hand to push Templeton's left elbow down around the latter's chest then Fong looped his right arm behind Templeton's head and grabbed Templeton's left wrist with his right arm.  (City's SOF ¶¶40, 42)

Templeton continued to kick, roll around on the ground, and fight at the officers as they attempted to get him under control. (City's SOF ¶43) As Noble was attempting to place handcuffs onto Templeton, they were knocked out of his hand by Templeton's erratic movement, and they slid away on the concrete. (City's SOF ¶44)

Noble was positioned on the right side of Templeton as he was on the ground while Fong and a civilian/bystander were on Templeton's left side. (City's SOF ¶47) Templeton's left wrist was first placed into handcuffs by Fong and the bystander and Noble was able to grab the handcuffs

and pull them behind Templeton's back towards his right wrist. (City's SOF ¶48) Noble was attempting to get Templeton's right wrist handcuffed Templeton continued to kick backwards and grazed the left side of Noble's head with his foot. (City's SOF ¶49)

Templeton was finally placed into handcuffs and then the officers rolled Templeton onto his side so that he was not lying face down with his hands behind his back.  However, when positioned upon his side Templeton continued to fight the officers from that position so the officers rolled him back on to his stomach to have better control. (City's SOF ¶50) Templeton continued to struggle, continued kicking and attempting to grab at Officer Noble's hands as Fong tried to maintain a hold of the handcuffs. (City's SOF ¶51)  Assisting officers from DMPD, State Patrol and Probation & Parole eventually arrived and took over control of Templeton. (City's SOF ¶52)

The officers that arrived to take over control of Templeton from Fong and Noble were Iowa State Patrol Officer, Captain Logsdon, Fifth Judicial District Officer Kness, and Des Moines Police Officers Dahlen, Cuppy, and Sergeant Robert Crouse.  (City's SOF ¶53)   When Dahlen arrived at this scene and asked if he can help in some way Fong can be heard asking if Dahlen has a "hobble".  (City's SOF ¶58) A Hobble is a fibrous strap that is used to restrain individuals by connecting their hands and feet, keeping them apart by more than twelve inches and advised to be 24-inches apart. (City's SOF ¶60)

Fong can be seen on one knee, restraining Templeton who is on his side with Fong restraining Templeton's legs by placing his leg in-between Templeton's legs.  (City's SOF ¶63) Templeton was not on his face or on his stomach nor in a prone position at this time. (City's SOF ¶64) When Officer Kness of the Fifth Judicial District, not an employee of Des Moines, arrived Templeton was still fighting officers and resistant.  (City's SOF ¶65)  Dahlen noted that Fong and Noble have injuries and should be "rotated out" and replaced by other officers in maintaining

control of Templeton. (City's SOF ¶70)  Officer Dahlen and Kness then kept Templeton in place, though he was still resistant.  The officers held Templeton in place but kept their weight off Templeton's body.  (City's SOF ¶72, 83)

As Templeton was still combative and resistant a hobble-tie was applied to his wrists and ankles by Officer Becker.  (City's SOF ¶75)  The hobble was applied so that Templeton's wrists and ankles were secured at least 24-inches apart.  (City's SOF ¶77)

The record is clear that Templeton was combative with the officers and resistant to the officers' attempts to control him.  Templeton is on occasion responsive to inquiries, for example when it is pondered aloud by an officer if he is on drugs, he responds, "No, I'm not!"(City's SOF ¶69).  Upon request, Templeton can state his name. (City's SOF ¶109)  Yet he is consistently not heeding instructions or reacting adversely to repeated requests he settle down or calm down. (City's SOF ¶70, 74, 102, 107-108)

While but one factor, the case law is clear that there is nothing improper in this circuit on the use of a hobble restraint upon a resistant, combative arrestee.  *Maynard v. Hopwood*, 105 F.3d 1226, 1227-28 (8th Cir. 1997)(use of handcuffs and hobble restraint objectively reasonable)

(ii)    <u>Extent of the plaintiff's injury</u>:

Perhaps the most distinguishing feature of this case, and virtually every other case concerning the use of a hobble-tie or hog-tie, or virtually any claim involving restraint, is the comparison of the Plaintiff's injury and those suffered in the vast majority of other cases.

In those cases, the arrestee ***died*** in police custody while restrained. See, *Lombardo v. City of St. Louis*, 141 S.Ct. 2239 (2021); *Maynard v. Hopwood*, 105 F.3d 1226, 1227-28 (8th Cir. 1997); *Cruz v. City of Laramie, Wyo.*, 239 F.3d 1183 (10th Cir. 2001); *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008); *Aguirre v. City of San Antonio*, 995 F.3d 395 (5th Cir. 2021); *Pratt v. Harris*

*County*, 822 F.3d 174 (5th Cir. 2016); *Khan v. Normand*, 683 F.3d 192 (5th Cir. 2012) *Gutierrez v. City of San Antonio*, 139 F.3d 441(5th Cir. 1999); *Lewis v. City of West Palm Beach*, 561 F.3d 1288 (11th Cir. 2009); *Sallenger v. City of Springfiled*, 630 F.3d 499 (7th Cir. 2010); *Sallenger v. Oakes*, 473 F.3d 731 (7th Cir. 2007); *Slater v. Deasey*, 789 Fed.Appx. 17 (9th Cir. 2019); *Bard v. Brown County*, 970 F.3d 738 (6th Cir. 2020); *Gunter v. Township of Lumberton*, 535 Fed.Appx. 144 (3rd Cir. 2013); *Goode v. Baggett*, 811 Fed.Appx. 227 (5th Cir. 2020); *Perez v. City of Fresno*, 2022 WL 826990 (E.D. Cal. March 18, 2022); *Murphy v. City of Farmington*, 2021 WL 1909794 (D. N.M. May 12, 2021)

In comparison, in this matter Mr. Templeton, already suffering from a seizure, was restrained for reasons explained above.  His immediate injury due related to the restraint was an appearance that his breathing may have been briefly altered and a change in color was noticed, almost immediately, by Officer Dahlen, which he communicated to medics.  (City's SOF ¶113) This occurred while fire department paramedics were attending to Templeton and Mathieu's actions were consistent with City policy to pay close attention to the detainee's status when restrained while prone.  (City's SOF ¶114)

Shortly thereafter, with continuing attention from fire department medics Templeton's color returned and he was breathing normally. Mr. Templeton was sent to the hospital and monitored, not because of his interaction with the police, but because of his second seizure in just over four months.  (City's SOF ¶141)

Templeton claims that his physical injuries related to the events of May 15, 2019, healed shortly thereafter, with at most, minor scarring on his wrist where he was handcuffed.  (City's SOF ¶139)  Templeton has no physical limitations or pain associated with his encounter with the officers. (City's SOF ¶140)

It is apparent that on this issue there is a substantial difference between the present case and the asserted almost non-existent injury and virtually every other contested case where death was the result of the struggle between the plaintiff and defendant police.

(iii)    <u>Any effort made by the officer to temper or limit the amount of force</u>:

Despite the considerable evidence of Mr. Templeton's combativeness, resistance of failure to comply with the officers' requests leading to an appropriate use of restraint, the record also demonstrates that officers did temper their use of force to a level reasonable for the circumstances they faced.  See, *Graham v. Conner*, 490 U.S. at 396 (1989).

As stated above the actions of non-party officers Fong and Noble were reasonable given the resistance and combativeness of Templeton.  (City's SOF ¶¶23-58)  The request for a "hobble" made by Officer Fong was reasonable based on their direct dealings with Mr. Templeton.  (City's SOF ¶59)

When Fong and Noble, due to their being injured and bleeding in dealing with Templeton, were replaced by Kness and Dahlen their physical restraint was reasonable.  Because of his resistance Mr. Templeton was kept in a prone position, though he was consistently requested to calm down and stop resisting.  (City's SOF ¶74, 79)  While officers Kness and Dahlen were restraining Templeton they were not placing weight upon him.  (City's SOF ¶83) This resistance and combativeness led to the eventual placement of a hobble by Officer Becker.  (City's SOF ¶75) The hobble can be seen fully extended and it clearly appears to be at least 24 inches apart between the ankles and wrists of Templeton.  (City's SOF ¶77)  Placing the hobble on Templeton was the only time Officer Becker came into physical contact with Templeton.

In the immediate aftermath of the application of the hobble no officer was touching Templeton.  (City's SOF ¶80)  Less than thirty seconds later Des Moines Fire Department medics

can be seen arriving.  (City's SOF ¶81)

After a period Dahlen went to Templeton's left side while the later was still prone on the ground and placed his left hand on Templeton's left shoulder.  (City's SOF ¶90)  Twenty-seconds later Dahlen briefly had his hands on both shoulders of Templeton but throughout Dahlen kept his weight distributed on the balls of his feet, like a catcher's stance.  (City's SOF ¶93, 103)  Ten seconds later Dahlen, still balanced like a catcher had his left knee lightly over Templeton's back. (City's SOF ¶94)  Paramedics had been present for approximately thirty seconds. (City's SOF ¶95)

After paramedics had been present for approximately one minute, one of the medics went from Templeton's left to right around Templeton's feet.  Templeton began to swing his legs, despite the hobble, and nearly hit this paramedic.  (City's SOF ¶102)  Dahlen then grabbed Templeton's legs and bent them in the direction of Templeton's buttocks. (City's SOF ¶104)  Approximately 30 seconds later Officer Cuppy assists Dahlen in maintaining the restraint on Templeton's legs. (City's SOF ¶105)  Approximately 15 seconds later Templeton was able to provide his name to Sergeant Crouse of the DMPD upon request.  (City's SOF ¶109)  Approximately 30 seconds later medics began talking to Templeton, and thirty seconds after that it was Dahlen who informed the medics that Templeton had changed in color.  (City's SOF ¶111, 113)  This monitoring by Dahlen was consistent with Des Moines Police policy.  (City's SOF ¶114)  Thirteen seconds later Dahlen had stood, and no one was holding Templeton's legs. (City's SOF ¶115).  All totaled Dahlen (for some portion with Cuppy' s assistance) had held Templeton's legs for approximately two minutes. (City's SOF ¶104, 115).

The evidence demonstrates that at no time was substantial weight or pressure placed upon Templeton's back by any law enforcement, and when this was done it occurred to arms, shoulders, or legs.  At no time was weight placed upon Templeton's spine, neck, or head.  Further, as the

undisputed evidence shows these actions occurred for the most part after the arrival of paramedics and demonstrated the officers were monitoring Templeton's physical status, including his breathing and color.

(iv)    <u>Severity of the security problem at issue and threat perceived by the officer</u>:

(v)     <u>Threat reasonably perceived by the officer</u>:

(vi)    <u>Whether plaintiff was actively resisting</u>:

    As stated above, Templeton was non-compliant/resisting, combative with officers, and at the time he was throwing his feet around, leading to Dahlen grabbing them with assistance from Cuppy, he could have hit either the officers or one of the medics, including possibly kicking them in the head.  Given this possibility and the short duration of this restraint – all while officers were also monitoring Templeton's status – the officers' actions were reasonable to deal with the security issue at hand.

    Further, officers were aware that this matter had begun with Templeton being combative and resistance with officers Fong and Noble who had been slightly injured due to Templeton's fighting their attempts to remove him from his car and otherwise restrain him following an auto accident in which he was non-responsive to officers' demands, with a car that was still in gear.

    Fong and Noble continued to struggle to restrain a still resistant Templeton and subsequent officers Dahlen, Cuppy and Officer Kness continued to struggle with a resistant Templeton over the next several minutes.  The force used by the officers prior to the application of the hobble did not place weight upon Templeton's back but did constrict the latter's ability to thrash around and injure the officers or himself.  Such is clearly a use of force, but it is a reasonable use of force. See, *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017)(police officers take down of a noncompliant suspected misdemeanant was reasonable use of force).

    The evidence, both of the uncontented events leading to Templeton's seizure and the

subsequent efforts to restrain Templeton as shown on various body cameras and the officers recitation of events show that a resistant, combative individual was restrained in a reasonable manner, that the restraint was consistent with policy and clearly not improperly applied, that medical personnel were promptly notified and in attendance, and that the officers themselves, consistent with their training monitored the Plaintiff's physical status to minimize injury or threat to the latter's person.

The evidence established that the hobble-tie was applied so that the plaintiff's ankles and wrists were 24-inches apart by defendant Becker.  (City's SOF ¶¶77, 79, 127-30)  The application was consistent with existing case law on the application of the hobble-tie.  *Cruz v. City of Laramie, Wyo.*, 239 F.3d 1183, 1186 (10th Cir. 2001)

As the testimony of the officers and the body cam footage demonstrates Mr. Templeton was physically fighting the officers, continued to be non-compliant and resistant necessitating the use of the hobble-tie, and subsequently the application of further restraint by defendant Dahlen and Defendant Cuppy.   Throughout this process, and consistent with training the officers monitored the Plaintiff's status, including after the paramedics arrived close in time to the application of the hobble.  It was Officer Dahlen himself who informed the paramedics in a change in Mr. Templeton's physical status. These actions, again, are consistent with case law.  See, *Lombardo* 141 S.Ct. at 2241, citing *Kingsley v. Hendrickson*, 576 U.S. 389, 37, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015).

Further, the case law when applied to the facts of this case make it clear that the defendants' actions were not contrary to clearly established constitutional rights.

Regarding the second prong of the qualified immunity analysis, the "clearly established right", the question posed must be beyond debate. *Jackson v. Stair*, 944 F.3d 704, 711 (8th Cir.

2019) "We have repeatedly told courts…not to define clearly established law at a high level of generality." *Mullenix v. Luna*, -- U.S. --, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015), quoting *Ashcroft v. al-Kidd*, 563 U.S.731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). The dispositive question is "whether the particular conduct is clearly established." *Id*. This inquiry must be undertaken in the specific context of the case, not a broad general proposition. *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004).

It is notable that the Plaintiff in this claim had injuries that are far afield from the overwhelming majority of cases involved restraint of resistant individuals which generally involve cases leading to death. There is no evidence here, other than the projection of the Plaintiff – who has no recollection of the event – that the Plaintiff was injured. However, there is ample and apparent evidence that the Plaintiff was at the time encountered by police a danger to himself or others. He was driving a vehicle (notably within 6 months of a seizure) while undergoing a seizure; he then was non-compliant and physically assaultive with police officers; continued to fight and resist officers while the latter consistent requested he calm down. Occasionally lucid enough to answer questions, the plaintiff alternatively was resistive and fighting with officers.

There is no applicable case law to the facts of this case. No case has held that an assaultive and resistant detainee cannot be restrained by police officers for the brief period in which this matter occurred, and for which Plaintiff was monitored successfully by an officer to make sure he suffered no substantial injury from a breathing event. There is no manner, even when the evidence is viewed in the best possible light for the plaintiff, that it can be asserted the defendant officers violated a "clearly established" constitutional right through their actions.

Simply put the named Defendants acted reasonably to the evidence they had before them,

consistent with the applicable law, including the standards laid out in *Kingsley*.  For all these reasons the defendants are immune from suit.

## II.  PLAINTIFF'S CLAIMS ARE TIME-BARRED

These events occurred on May 15, 2019.  The Plaintiff originally filed this action on May 14, 2021, one day before the statute of limitations would have expired from the purposed date of injury under either Iowa Code Chapter §614.1 for the claims brought under the Federal Constitution or Iowa Code Chapter §670.5 as it related to any claim brought under state of common law.  The Plaintiff did file a Motion to Amend replacing Fong and Noble the original named parties and replaced them with the present  defendants on February 2, 2022.  The Defendant resisted but the filing was allowed by the Magistrate in an order on March 28, 2022.  The magistrate reserved issues such as timeliness for the court in any subsequent dispositive motion.

The Iowa Legislature has adopted the Iowa Municipal Tort Claims Act ("MTCA") codified in Iowa Code §670. As the title suggests, the MTCA outlines the rules for all tort claims against municipalities involving state law claims. Iowa Code § 670.2.

The City of Des Moines and its employees are covered under the MTCA. Iowa Code § 670.1. The MTCA makes municipalities and its employees liable for torts, but also provides protections other parties do not receive. The MTCA creates several immunities to tort claims that most citizens do not enjoy. Iowa Code § 670.4.

Iowa Code §670.5 states:

" Except as provided in section 614.8, a person who claims damages from any municipality or any officer, employee or agent of a municipality for or on account of any wrongful death, loss, or injury within the scope of section 670.2 or section 670.8 or under common law **shall commence an action therefor within two years after the alleged wrongful death, loss, or injury.**"(emphasis

added)

The limitations period under Iowa Code §670.5 <u>commences on the date of the injury</u>.  See

*Venckus v. City of Iowa City*, 930 N.W.2d 792, 808, (Iowa 2019) citing *Doe v. New London*

*Community School District*, 848 N.W.2d 347, 353-4 (Iowa 2014).

Notably, under §670.5 there is no date of accrual beyond the date of injury, and there is no

discovery rule: there is no elasticity in the statue expanding the time to file suit. *Venkus*, 930

N.W.2d at 807 citing *Uchtorff v. Dahlin*, 363 N.W.2d 264, 266 (Iowa 1985), *Orr v. City of*

*Knoxville*, 346 N.W.2d 507, 510 (Iowa 1984); see also *New London*, 848 N.W.2d at 352.  There is

no tolling of the statute.  *Perkins ex. rel. Perkins v. Dallas Center-Grimes Cmty. Sch. Dist*., 727

N.W.2d 377, 380 (Iowa 2007).  Therefore, the Plaintiff's arguments of equitable estoppel and the

"discovery rule" do not apply to state law claims.

Simply put Dahlen, Cuppy, and Becker were named as parties will after the expiration of

the applicable state and federal statute of limitations.

Further, case law clearly establishes that the Amended Complaint is deemed filed on the

date in which the Motion to Amend is filed, here, February 7, 2022.  See *Mayes v. AT&T*

*Information Systems, Inc*. 867 F.2d 1172, 1173 (8th Cir. 1989).  This is important because in

addition to the issues related below, the Amended Complaint is defective in regard to all state

claims and must be denied and assertions against the City vis-à-vis the added three Plaintiffs as

well as the claims asserted under the Iowa Constitution against the three new Plaintiffs because

the Amended Complaint does not comply with the requirements of Iowa Code §670.4A.  The

statute, effective June 17, 2021, requires a Plaintiff "must state with particularity the circumstances

constituting the violation and that the law was clearly established at the time of the alleged

violation.  Failure to plead a plausible violation *or failure to plead that the law was clearly*

*established at the time of the alleged violation shall result in dismissal with prejudice." Iowa Code*
*§670.4A(3).* The Amended Complaint at issue here does not have this language, while by law
being deemed filed on February 7, 2022. Therefore, the State law claims in the Amended
Complaint against Becker, Cuppy, and Dahlen must be dismissed with prejudice on that basis.
Likewise, the common law negligent supervision claims against the City based on the actions of
Becker, Cuppy and Dahlen must also be dismissed with prejudice as well. Further basis for
denying the Amended Complaint related to the individuals are discussed below.

## III.   THERE IS NO VALID CLAIM OF NEGLIGENT HIRING, SUPERVISION, OR RETENTION IN THIS MATTER

A claim of negligent supervision under State law "must include as an element an
underlying tort or wrongful act committed by the employee." *Schoff v. Combined Ins. Co. of Am.*,
604 N.W.2d 43, 53 (Iowa 1999) (citation omitted) (relying on Restatement (Second) of Agency §
213 cmt. a, at 458 (1958)). This requirement means that Plaintiffs must prove "as an element" of
this claim that a supervisory employee, or the supervisory process as it exists, led to the
commission of a wrongful act. Here, the wrongful act alleged was the supervision of Officers Fong
and Noble by the Police Department.

As stated above, there has not been sufficient evidence put forth to demonstrate a jury
question that Defendants committed any violation of the law regarding his actions involving Mr.
Templeton. In fact, as made clear above, the evidence is clear no defendant engaged in any of the
actions the Plaintiff assertions were excessive force. With no such offending use, there was no
ratification of an improper act possible.

The City cannot be negligent in the supervision officers that commit no legal wrong.
Further, there is no evidence any of the named defendants had ever been disciplined, or even
investigated, for any even generally similar offense. There was no violation and no prior notice.

With no prior claim, or act, and certainly no discipline related to such acts, the City cannot have notice, nor should have known, the plaintiff's rights would have a substantial risk of being violated. See, *Godar v. Edwards*, 588 N.W.2d 701, 709-10 (Iowa 1999)

In addition, the evidence is clear and uncontroverted that the City of Des Moines does train officers in both the use of the hobble-restraint and on positional asphyxiation and the training is consistent with the applicable law.

There has been no evidence put forward by the Plaintiff demonstrating that anyone from the City failed to use due care in the training, policies, or supervision of officers.

For all the reasons above, the Plaintiff cannot prevail on this claim, and it should be dismissed with judgment for Defendants.

## CONCLUSION

For all the reasons stated above, the Plaintiffs have failed to establish their claims in this matter.  Defendants Dahlen, Cuppy and Becker did not violate any right of the Plaintiff under the Federal or Iowa Constitution.  The Defendants did not engage in excessive force, they did not engage in an improper search and seizure.  Further, the City of Des Moines did not negligently hire, supervise nor retain these Officers.  The Plaintiffs claims should be dismissed in their entirety with prejudice and judgment entered for the Defendants.

/s/*John O. Haraldson.*
JOHN O. HARALDSON AT0003231
Assistant City Attorney
400 Robert D. Ray Drive
Des Moines, IA  50309-1891
E-Mail:  joharaldson@dmgov.org
(515) 283-4072- telephone
(515) 237-1748 – facsimile

ATTORNEY FOR DEFENDANTS

Copy to:

Jim T. Duff
Thomas J. Duff
DUFF LAW FIRM, PLC
The Galleria
4090 Westown Pkwy, Suite 102
West Des Moines, Iowa 50266
jim@tdufflaw.com; tom@tdufflaw.com

Ben Lynch
8550 Hickman Road
Clive, Iowa 50325
email: ben@benlynchlaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above-entitled cause by transmittal to each of the attorneys of record at their respective email addresses disclosed on the pleadings of record on the 19th day of April 2022.

By:    ☐ U.S. Mail           ☐ Fax
       ☐ Hand-Delivered       ☒ E-Mail

Signature: /s/ John O. Haraldson