IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| NICHOLAS TEMPLETON, **Plaintiff,** v. CITY OF DES MOINES, IOWA; ANDREW BECKER, MATHIEU DAHLEN and BRIAN CUPPY, in their individual and official capacities, **Defendants.** | **No. 4:21-cv-00188-RGE-SBJ** **ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.  INTRODUCTION

Plaintiff Nicholas Templeton sues Defendants the City of Des Moines, Iowa, and Andrew Becker, Mathieu Dahlen, and Brian Cuppy, in their individual and official capacities, for claims arising from a May 15, 2019 encounter with law enforcement officers. Templeton alleges Defendants violated his rights under the United States Constitution and the Iowa Constitution. Templeton also alleges related claims under Iowa common law. Defendants move for summary judgment on Templeton's claims. Templeton resists.

For the reasons set forth below the Court grants in part Defendants' motion for summary judgment.

## II.  BACKGROUND

The following facts are either uncontested or, if contested, viewed in the light most favorable to Templeton for purposes of Defendants' motion for summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

On May 15, 2019, there was an emergency call regarding the driver of a car in the parking

lot of the Capitol Complex. Pl.'s Resp. Defs.' Statement Material Facts ¶ 8, ECF No. 56-2. The caller reported the car was still in gear and the driver was having a seizure. *Id.* Around that time, Des Moines Police Officers Michael Fong and Jason Noble were near the Capitol Complex and observed a black Jeep stopped in the grass near the parking lot of the Hoover Building. *See id.* ¶ 9. Fong observed individuals knocking on the driver's side window of the Jeep. *Id.* ¶ 12. Fong and Noble noticed tire tracks in the grass from Court Avenue to where the vehicle was currently stopped. *Id.* ¶ 15. Noble reported that it appeared from the path of the tire tracks that some sort of medical emergency, or alcohol or narcotic impairment, caused the Jeep to leave the roadway and travel several hundred years through the grass. *Id.* ¶ 16.

Fong and Noble pulled into the parking lot and observed the Jeep continue to move forward. *Id.* ¶ 19. The Jeep stopped after bumping into another vehicle in the parking lot. *Id.* ¶ 20. Fong and Noble notified the individuals near the Jeep that they were police officers. *Id.* ¶ 22. Fong and Noble were informed that the Jeep was still in gear. *Id.* ¶ 23. Noble reported he made eye contact with the driver who appeared to be in an "altered state of mind." *Id.* ¶ 24. The driver, Templeton, was unable to process orders and directions and unable to control his bodily movements due to an ongoing seizure. *Id.* ¶ 14; *see also id.* ¶ 24. Noble tried to get Templeton's attention and instructed him to unlock his car doors. *Id.* ¶¶ 25, 26. Fong radioed for assistance. *Id.* ¶ 28. Noble reported that Templeton held the door shut and pressed the lock button on the driver's side door. *Id.* ¶ 29; Defs.' Statement Material Facts 55, ECF No. 40-2 (Noble's Supplemental Report). Noble testified that at some point, Templeton unlocked and slightly opened the driver's door. ECF No. 56-2 ¶ 30; Noble Dep. 12:10–12, ECF No. 40-2 at 155. Noble testified he attempted to pull the door open, but Templeton shut it and slammed Noble's finger in the door. ECF No. 56-2 ¶¶ 31–32; Noble Dep. 12:12–14, ECF No. 40-2 at 155. Fong opened the passenger

door. ECF No. 56-2 ¶ 33. Fong testified Templeton was positioned with his back against the driver's side door and kicked Fong in the chest to push him backward. *Id.* ¶ 34. A 911-caller reported to dispatch that Templeton fought the officers as they attempted to get control of him in the passenger compartment. *Id.* ¶ 35; Dispatch Audio 2:46–55, ECF No. 40-2 at 247. The officers were able to pull Templeton out of the Jeep and onto the concrete parking lot. ECF No. 56-2 ¶ 39; *see also id.* ¶¶ 36–38, 40–41. Templeton continued to "kick, roll around[,] . . . and fight . . . the officers as they attempted to get [him] under control." *Id.* ¶ 43. Noble testified that while trying to restrain Templeton, Templeton kicked handcuffs out of Noble's hands and grazed Noble's head as he kicked backward. *See id.* ¶¶ 46, 49. Templeton was placed in handcuffs. *Id.* ¶ 50. Noble reported Templeton continued to struggle against the officers. *Id.* ¶ 51.

Other law enforcement officers arrived to relieve Noble and Fong, including Des Moines Police Officers Mathieu Dahlen and Brian Cuppy. *Id.* ¶¶ 52–53. Fong expressed his belief that Templeton was under the influence of drugs to which Templeton responded "No, I'm not." *Id.* ¶ 69. Dahlen, Cuppy, and a probation officer from the Fifth Judicial District, took over for Fong and Noble. *Id.* ¶ 73; *see also id.* ¶¶ 70–71. Dahlen supplied a hobble-tie. *Id.* ¶ 76. A "hobble-tie" is "fibrous strap that is used to restrain individuals by connecting their hands and feet" at a distance of more than twelve inches. *Id.* ¶¶ 60, 78. When the distance between the feet and hands is less than twelve inches it is referred to as a "hog-tie." *Id.* ¶ 78. Des Moines Police Officer Andrew Becker—an officer who has trained police recruits on defensive tactics such as hobble-ties— placed the hobble-tie on Templeton. *Id.* ¶¶ 75–76, 124. Defendants contend the hobble-tie was applied so that Templeton's hand and feet were at least twenty-four inches apart. *Id.* ¶ 77. Templeton contends the hobble-tie was less than twenty-four inches apart. *Id.* For a period of time, the probation officer had his knee on Templeton's shoulder. *See id.* ¶ 83. Dahlen had his hand on

Templeton's back and eventually had his knee on Templeton's leg for thirty-five seconds. *Id.* ¶ 93. Dahlen then moved his knee to Templeton's back. *Id.* ¶ 94

Less than a minute after the hobble-tie was applied, the fire department paramedics arrived. *Id.* ¶ 81. The paramedics came around Templeton and he began kicking his legs. Dahlen Body Camera 7:10–8:05, ECF No. 40-2 at 245. Dahlen, while having his hand and knees on Templeton's back, grabbed Templeton's legs and bent them forward to control them from moving. ECF No. 56-2 ¶¶ 103–04. Cuppy assisted Dahlen in restraining Templeton's legs. *Id.* ¶¶ 105, 110. Templeton did not respond to questions from paramedics. *Id.* ¶ 112. Dahlen informed the paramedics Templeton's color had changed. *Id.* ¶ 113. Dahlen and Cuppy stood away from Templeton. *Id.* ¶¶ 115, 117. Templeton was rolled onto his side. *Id.* ¶ 118. Paramedics placed Templeton in an ambulance and transported him to a hospital. *Id.* ¶ 119. Templeton contends he has no recollection of his encounter with law enforcement officers. ECF No. 56-2 ¶¶ 29, 121. Templeton testified he recalls getting into his Jeep after having lunch with his mother and later waking up in the hospital. *Id.* ¶¶ 133–34. Templeton's wrists and ankle bled from the handcuffs and hobble-tie. Pl.'s Statement Add'l Material Facts Supp. Resist. Defs.' Mot. Summ. J. ¶ 46, ECF No. 56-3.

Templeton filed a two-count complaint in the Iowa District Court for Polk County against the City of Des Moines, Noble, and Fong. Compl., ECF No. 1-1. Defendants removed to this Court. Notice Removal, ECF No. 1. Templeton filed an amended complaint removing Noble and Fong and naming Becker, Dahlen, and Cuppy. ECF No. 33. Templeton alleges claims against the individual defendants for excessive force in violation of his Fourth Amendment rights and his rights under Article I, Section 8 of the Iowa Constitution (Count I). *Id.* ¶¶ 32–33, 41–42. Templeton alleges the City of Des Moines violated his rights under the United States Constitution and the

Iowa Constitution by maintaining or ratifying policies or customs which deprive citizens the right to be free from the use of excessive force (Count I). *Id.* ¶¶ 34–40. Templeton alleges a claim against the City of Des Moines under Iowa common law for negligent supervision and retention (Count II). *Id.* ¶¶ 44–52.

Defendants move for summary judgment. ECF No. 40. Templeton resists. ECF No. 52. Neither party requests a hearing on the motion. The Court decides the motion without oral argument, finding the parties' briefing and exhibits adequately present the issues. *See* LR 7(c); Fed. R. Civ. P. 78(b). Additional facts are set forth below as necessary.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists where the issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

When analyzing whether a party is entitled to summary judgment, a court "may consider only the portion of the submitted materials that is admissible or useable at trial." *Moore v. Indehar*, 514 F.3d 756, 758 (8th Cir. 2008) (internal quotation marks omitted) (quoting *Walker v. Wayne Cnty.*, 850 F.2d 433, 434 (8th Cir. 1988)). The nonmoving party "receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mt. View*,

709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)). "In order to establish the existence of a genuine issue of material fact, a plaintiff may not merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 531 (8th Cir. 2008) (cleaned up). "The plaintiff must substantiate [the] allegations with sufficient probative evidence that would permit a finding in [plaintiff's] favor." *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and the moving party is entitled to judgment as a matter of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting *Ricci*, 557 U.S. at 586).

## IV.    DISCUSSION

In Count I, Templeton alleges violations of his right to be free from excessive force under the United States Constitution and the Iowa Constitution. In Count II, Templeton alleges claims under Iowa common law. Defendants argue, in part, summary judgment is appropriate on Count I because they are entitled to qualified immunity on Templeton's excessive force claims.

First, the Court addresses Templeton's federal law claims and considers whether Defendants are entitled to qualified immunity on these claims. Next, the Court considers Templeton's Iowa law claims. Because Defendants are entitled to qualified immunity on Templeton's federal law claims, the Court declines to exercise supplemental jurisdiction over Templeton's claims under Iowa law and remands the claims. The Court also declines to address the parties' arguments regarding the timeliness of Templeton's claims.

### A.    Federal Claims

#### 1.    Excessive force

In Count I, Templeton alleges claims under 42 U.S.C. § 1983 against Becker, Dahlen, and Cuppy for use of excessive force in violation of Templeton's Fourth Amendment rights. ECF No. 33 ¶¶ 32–33. Defendants move for summary judgment, arguing, in part, they are entitled to qualified immunity on Templeton's excessive force claim because he fails to demonstrate his right to be free from the use of force at issue was clearly established at the time of incident. *See* Defs.' Br. Supp. Mot. Summ. J. 11–25, ECF No. 44.

State actors sued under § 1983 may assert qualified immunity. *See Goffin v. Ashcraft*, 957 F.3d 858, 861 (8th Cir. 2020). Under this doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The party asserting qualified immunity has "the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences. If there is a genuine dispute concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008) (internal citations omitted).

Qualified immunity analysis has two steps. One: a court must decide whether the facts alleged make out a violation of a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Two: "the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (internal quotation marks and citation omitted). "Although the defendant bears the burden of proof for this affirmative defense, the plaintiff must demonstrate that the law was clearly established." *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). "If either [inquiry] is answered in the negative, the public official is entitled to

qualified immunity." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (internal quotation marks and citation omitted). The steps need not be addressed in the order identified. *Pearson*, 555 U.S. at 236.

The Court considers the clearly established prong of the qualified immunity analysis. Because the Court's analysis on this prong is dispositive, it declines to address the first prong.

A right is clearly established if, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[T]he plaintiff has the burden of demonstrating that the law confirming [his] constitutional right was clearly established . . . ." *Hanson as Tr. for Layton v. Best*, 915 F.3d 543, 548 (8th Cir. 2019). To do so, the plaintiff "must identify 'controlling authority' from the Supreme Court or [the Eighth Circuit's] prior case law or a 'robust consensus of cases of persuasive authority' that places the constitutional question 'beyond debate.'" *Id.* (quoting De La Rosa v. White, 852 F.3d 740, 746 (8th Cir. 2017)). "Broadly speaking, [t]he right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." *Peterson v. Kopp*, 754 F.3d 594, 600 (8th Cir. 2014) (alteration in original) (internal quotation marks and citation omitted). "That said, [w]hile there is no requirement that the very action in question has previously been held unlawful, [plaintiff] can succeed only if earlier cases give [defendant] fair warning that his alleged treatment of [plaintiff] was unconstitutional." *Id.* (first alteration in original) (internal quotation marks and citation omitted).

The Eighth Circuit recently considered whether a detainee has a clearly established right to be free from a prone restraint in *Lombardo v. City of St. Louis*, 38 F.4th 684, 690–92 (8th Cir.

2022). There, officers observed a detainee in an individual cell act unusually and attempting to harm himself. *Id.* at 687. An officer entered the cell and attempted to handcuff the detainee. *Id.* The detainee began to struggle with multiple officers. *Id.* Officers placed the detainee in handcuffs and shackles and put him in a prone position on the cell floor. *Id.* at 687–88. The detainee continued to thrash and kick at officers with his shackled legs. *Id.* at 688. The detainee struggled for fifteen minutes while in the prone position." *Id.* During that time, officers controlled his "shoulders, biceps, legs, and lower or middle torso. *Id.* After the detainee stopped resisting, the officers rolled him from his stomach to his side. *Id.* The detainee had stopped breathing. *Id.* He was transported to the hospital where he was pronounced dead. *Id.* at 688–89.

The Eighth Circuit initially affirmed the district court's grant of summary judgment in favor of the municipal defendants, finding the plaintiff did not demonstrate a violation of the detainee's constitutional rights. *See Lombardo v. City of St. Louis*, 956 F.3d 1009, 1014 (8th Cir. 2020), *cert. granted, judgment vacated sub nom. Lombardo v. City of St. Louis, Missouri*, 141 S. Ct. 2239 (2021); *see also Lombardo*, 38 F.4th at 690. On remand from the Supreme Court, the Eighth Circuit focused on the clearly established prong of the qualified immunity analysis. *See Lombardo*, 38 F.4th at 690–92. The Eighth Circuit determined that to the extent "a court of appeals decision may constitute clearly established law, the precedent in this area is insufficient to demonstrate that the facts in this case show a violation of a clearly established right of a detainee to be free from prone restraint while resisting." *Id.* at 690. The Eighth Circuit recognized it "ha[d] not deemed prone restraint unconstitutional in and of itself the few times [it] ha[s] addressed the issue." *Id.* at 691 (internal quotation marks omitted) (quoting *Hanson*, 915 F.3d at 548). As to whether a robust consensus of persuasive authority existed, the Eighth Circuit looked to its recent decision in *Hanson as Trustee for Layton v. Best*. *See id.* at 691 (citing 915 F.3d at 548). The

Eighth Circuit reiterated its conclusion in *Hanson* that "the fact-intensive qualified immunity analyses in comparable appellate cases have yet to produce a sufficiently particularized 'robust consensus' about prolonged prone restraint." *Id.* at 691(citing *Hanson*, 915 F.3d at 548) (noting cases from the Fifth, Sixth, Ninth, and Tenth Circuits were distinct because they involved instances where a subject had ceased resisting while in a prone position and officers continued to apply force); *see Simpson v. Hines*, 903 F.2d 400, 401–03 (5th Cir. 1990); *Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004); *Weigel v. Broad*, 544 F.3d 1143, 1148, 1152–55 (10th Cir. 2008). The court noted its recitation of the law set forth in *Hanson* in 2019 remained unchanged as of its June 2022 decision in *Lombardo*. *See* 38 F.4th at 691. As such, the Eighth Circuit found that the detainee's "right to be free from prone restraint while engaged in ongoing resistance, even where officers applied force to various parts of his body, including his back, was not clearly established in 2015 when the incident . . . occurred." *Id.*

Body camera footage supports finding Templeton continued to resist while in a prone restraint. Body camera footage shows Templeton was in a prone position for over six minutes. *See* Crouse Body Camera 5:19–11:23, ECF No. 56-2 at 246; Pl.'s Br. Supp. Resist. Defs.' Mot. Summ. J. 20, ECF No. 56 ("For more than six minutes, Templeton is prone, handcuffed and later hobbled . . . ."); *see also* Dahlen Body Camera 3:05–10:51, ECF No. 56-2 at 245. Approximately two minutes into being in the prone position a hobble restraint was applied. Crouse Body Camera 7:21, ECF No. 56-2 at 246. Approximately one minute after a hobble restraint was applied, the paramedics arrived. *See* Dahlen Body Camera 6:22, ECF No. 56-2 at 245. While in the prone position, Templeton continued to intermittently yell, shift his body, and kick his legs until the paramedics arrived and attempted to take his vitals. *See id.* at 3:16, 3:27, 3:35, 3:45, 3:50, 3:59,

4:10–20, 4:45–5:00, 6:35, 6:55, 7:05, 7:35; Crouse Body Camera 7:24, 7:43, 7:54, 8:06–8:10, 8:19, ECF No. 56-2 at 246. Officers can be heard on multiple occasions telling Templeton to relax. Dahlen Body Camera 4:04, 5:06, 6:10, 6:40, ECF No. 56-2 at 245. Templeton began kicking as the paramedics attempted to take his vitals. *See id.* at 7:57, 8:05. Dahlen and Cuppy held Templeton's legs while paramedics attempted to take Templeton's vitals. Crouse Body Camera 8:10, 8:40, ECF No. 56-2 at 246. While paramedics attempted to get Templeton's vital signs, Cuppy, who was assisting Dahlen with holding Templeton's legs, indicated Templeton "was pushing really hard." Dahlen Body Camera 9:12, ECF No. 56-2 at 245. Approximately one minute later, Cuppy indicated Templeton was no longer pushing. *Id.* at 10:11–15. Approximately forty-five seconds after it was indicated Templeton was no longer resisting, the officers moved Templeton from his stomach to his side and removed his restraints. *Id.* at 10:55.

The circumstances here are similar to *Lombardo* in that officers applied force to various places on Templeton's body when he was resisting while in prone restraint. The record demonstrates Templeton struggled against law enforcement from the time they encountered him in his Jeep. The record demonstrates Templeton yelled and kicked in resistance throughout the approximately six minutes he was in a prone position and in a hobble restraint. The record demonstrates Templeton kicked as paramedics attempted to take his vitals and pushed back against officers as they held his legs while his vitals were taken. A matter of seconds passed from when an officer indicated Templeton was no longer resisting to when his restraints were removed. As set forth in *Lombardo*, Templeton had no clearly established right to be free from a prone restraint while engaged in ongoing resistance, even where officers applied force to his body. In its 2022 decision in *Lombardo*, the Eighth Circuit indicated there was no robust consensus of persuasive authority to render that right clearly established in 2015. The court reached this conclusion after

noting its recitation of the law on this issue has remained unchanged since its 2019 decision in *Hanson. See Lombardo*, 38 F.4th at 691. The events at issue here took place in May 2019. Templeton points to no cases—and the Court is aware of none—that add to the Eighth Circuit's 2019 recitation of the law and remedy the lack of robust consensus of persuasive authority recognized in *Lombardo* and *Hanson. See* ECF No. 56 at 22–28. It follows that Templeton's right to be free from a prone restraint under the circumstances was not clearly established at the time of the incident.

Templeton fails to show his right to be free from a prone restraint while resisting was clearly established at the time of the incident. As such, Cuppy, Dahlen, and Becker are entitled to qualified immunity on Templeton's excessive force claim. Summary judgment is warranted on this claim.

### 2. *Monell* liability

Count I is titled: "Use of Excessive Force in Violation of the Fourth Amendment to the U.S. Constitution and Article I, Section 8 of the Iowa Constitution." *See* ECF No. 33 at 5. Within Count I, Templeton also appears to include a *Monell* liability claim against the City of Des Moines, arguing the City of Des Moines established a policy of deliberate indifference to the constitutional rights of persons in similar positions to Templeton. *See id.* ¶¶ 34–35. Defendants seek summary judgment on all of Templeton's claims. ECF No. 40. Defendants' arguments as to summary judgment do not specifically address any *Monell* liability claims. *See* ECF No. 44 at 5–28 (arguing Defendants are entitled to qualified immunity and Templeton's constitutional claims are time-barred). Templeton does not make any arguments regarding whether he maintains a *Monell* liability claim. *See* ECF No. 56. To the extent Templeton alleges a *Monell* liability claim against the City of Des Moines, summary judgment is warranted on that claim. As discussed above,

Templeton fails to demonstrate a clearly established constitutional right. "[A] deliberate indifference claim fails in '[t]he absence of clearly established constitutional rights,' so-called 'clear constitutional guideposts for municipalities in the area." *Lombardo*, 38 F.4th at 692 (second alteration in original) (quoting *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 394 (8th Cir. 2007) (en banc)). Thus, Templeton cannot maintain a claim for deliberate indifference policies against the City of Des Moines.

### B.      Iowa law claims

Having determined summary judgment is warranted on Templeton's claims under 42 U.S.C. § 1983 in Count I, the Court now considers Templeton's remaining claims under Iowa law in Counts I and II.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As discussed above, Defendants are entitled to summary judgment on Templeton's federal law claims—the only claims over which the Court has original jurisdiction. The Court can preside over state law claims ancillary to the federal claims. 28 U.S.C. § 1367(a). Because the Court grants summary judgment to Defendants on Templeton's federal claims, the Court has discretion as to whether to exercise supplemental jurisdiction over Templeton's remaining state law claims, which include: claims for violations of Article I, Section 8 of the Iowa Constitution (Count I); and, claims under Iowa common law for negligent hiring and retention (Count II). *See Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018) ("A district court [that] has dismissed all claims over which it has original jurisdiction may decline to exercise supplemental jurisdiction." (alteration in original) (internal quotation marks omitted) (quoting 28 U.S.C. § 1367(c)(3))). In determining how to exercise its discretion, the Court considers "the stage at which the federal claims were disposed of, 'the difficulty of the state claim, the

amount of judicial time and energy already invested in it, the amount of additional time and energy necessary for its resolution, and the availability of a state forum.'" *Marshall v. Green Giant Co.*, 942 F.2d 539, 549 (8th Cir. 1991) (quoting *Koke v. Stifel, Nicolaus & Co., Inc.*, 620 F.2d 1340, 1346 (8th Cir. 1980)). "In the 'usual case' where all federal claims are dismissed on a motion for summary judgment, 'the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). The Court declines to exercise supplemental jurisdiction. The remaining Iowa constitutional claims implicate uncharted areas of Iowa law over which the parties significantly disagree. *See* ECF No. 44 at 11–12, 26–27; ECF No. 56 at 29–43; *see also Baldwin v. Estherville*, 915 N.W.2d 259, 279 (Iowa 2018) (establishing the availability of "all due care" immunity to direct constitutional tort claims); *Venckus v. City of Iowa City*, 930 N.W.2d 792, 808 (Iowa 2019) (determining direct constitutional tort claims are subject to the Iowa Municipal Tort Claims Act); Iowa Code § 670.4A (setting forth a qualified immunity standard similar to federal qualified immunity effective as of June 17, 2021). Templeton's claims under Iowa common law implicate the same facts and circumstances as his state constitutional claims. Further, there is nothing to indicate a state forum is unavailable. For these reasons, the Court declines to exercise supplemental jurisdiction over Templeton's remaining claims under Iowa law in Counts I and II. The Court remands these claims to the Iowa District Court for Polk County.

## V.   CONCLUSION

Templeton fails to point to a robust consensus of cases demonstrating he had a clearly established right to be free from the use of a prone restraint at the time he was restrained. As such,

Becker, Dahlen, and Cuppy are entitled to qualified immunity on Templeton's excessive force claims under § 1983 in Count I. To the extent Templeton maintains a claim for deliberate indifference under § 1983 against the City of Des Moines, summary judgment is also warranted on that claim in Count I. Because Templeton fails to demonstrate a clearly established right to be free from the use of excessive force under the circumstances, he cannot assert a claim for *Monell* liability against the City of Des Moines. Defendants are entitled to summary judgment on Templeton's federal law claims. Having disposed of Templeton's federal claims, the Court declines to exercise supplemental jurisdiction over Templeton's remaining claims under the Iowa Constitution and Iowa common law. Because this case was removed, the Court remands Templeton's Iowa law claims in Counts I and II back to the Iowa District Court for Polk County.

For the foregoing reasons, **IT IS ORDERED** that Defendants the City of Des Moines, Andrew Becker, Mathieu Dahlen, and Brian Cuppy's Motion for Summary Judgment, ECF No. 40, is **GRANTED IN PART AND REMANDED IN PART**.

**IT IS SO ORDERED.**

Dated this 24th day of August, 2022.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE

15